**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

FELTON L. MATTHEWS )
                                          )        3:06-CV-00401-RLH (VPC)
            Plaintiff,            )
                                          )
    vs.                             )        **REPORT AND RECOMMENDATION**
                                          )        **OF U.S. MAGISTRATE JUDGE**
A. ENDEL, et al.,             )
                                          )
            Defendants.        )        October 21, 2008
_____)

This Report and Recommendation is made to the Honorable Roger L. Hunt, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#169).  Plaintiff opposed (#172/174), and defendants replied (#177).  For the reasons stated below, the court recommends that defendants' motion for summary judgment (#169) be granted.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Felton L. Matthews ("plaintiff"), a *pro se* prisoner, is currently incarcerated by the Nevada Department of Corrections ("NDOC") at Ely State Prison ("ESP") (#175).  Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that prison officials violated his Eighth Amendment right prohibiting cruel and unusual punishment and his Fourteenth Amendment rights to equal protection and due process while he was incarcerated at Lovelock Correctional Center ("LCC") and ESP (#4).  Plaintiff names as defendants Adam Endel, ESP Assistant Warden of Programs; Cherie Scott, ESP Assistant Warden of Operations; Joyce Thomson, "Head Case Worker at LCC"; and Bruce Harkreader, "Unit 5 Hole Caseworker for Dis-Seg & Ad-Seg inmates." *Id.*[1]

---

[1]On October 5, 2006, the District Court granted in part defendants' motion to dismiss to the extent that the complaint sought damages against defendants Scott and Harkreader in their official capacities. On November 15, 2006, the District Court ordered that "J. Thomson" be substituted for

Plaintiff's complaint includes three counts of alleged constitutional violations, as follows:

- <u>Count 1</u> – Plaintiff alleges that defendants failed to protect him against assaults, harassment, and property destruction from other inmates, "forcing [plaintiff] to face eminent (sic) danger of physical bodily harm by denying [plaintiff] access to protective segregation," thus violating plaintiff's Eighth Amendment rights. *Id*., p. 4. Plaintiff alleges that, because he is among a class of inmates often subject to assault, he has a vested liberty interest in a custody classification of protective segregation. Plaintiff also alleges that he is being held in long term administrative segregation as a substitute for protective segregation, which he claims is inadequate and illegal. Plaintiff also claims that defendants are required to remove slander (the label "aggressive homosexual") contained in his I-File because he was not afforded a hearing or notice before such a label was added. *Id*. pp. 4-5;

- <u>Count 2</u> – Plaintiff alleges that defendants violated his rights to due process and equal protection with regard to the allegations in Count 1. *Id*., pp. 6-7. Plaintiff alleges that defendants denied him due process by housing him in long-term administrative segregation, and equal protection by not housing him in protective segregation while others who were frequently threatened or assaulted have been placed in protective segregation. Plaintiff also alleges that although defendants justify the denial of protective segregation on their belief that plaintiff "failed" in protective segregation at Lovelock Correctional Center, it was actually denied because of the slander found in plaintiff's I-File "which erroneously portrays [plaintiff] as a violent sexual deviant homosexual."*Id*.;

- <u>Count 3</u> – Plaintiff alleges that defendants violated his Eighth Amendment right prohibiting cruel and unusual punishment. Plaintiff asserts that he is in imminent danger of physical bodily harm by not being housed in protective segregation. Plaintiff also claims that defendants' refusal to place him in protective segregation is retaliatory for plaintiff's "building a case against the state concerning sex offenders so they curve contact in P/S units and LCC" (#4, pp. 8-9).

Defendants brought a previous motion for summary judgment (#59). The court granted the motion "as to plaintiff's claims that defendants refused him access to protective custody and that he is in imminent danger of physical bodily harm," and denied the motion as to all other claims (# 98, p. 9). The court specifically found that "[p]laintiff has no constitutional right to choose the location of his confinement. Moreover, plaintiff's current incarceration in LCC protective custody moots his claims that defendants refused him access to protective custody and that he is in imminent danger of physical bodily harm because of this denial."*Id*. Therefore, although defendants address and the court discusses some of the dismissed claims, the court reiterates that any claims seeking money damages from defendants Scott and Harkreader have already been dismissed. Additionally, plaintiff's claim that he is in imminent danger in Counts

the defendant identified only as "CCSW III" in plaintiff's complaint (#30).

1 and 3 of his complaint, as well as plaintiff's claim that he has a liberty interest in protective segregation and that defendants refused him protective custody in Count 1, have also been dismissed. *Id.*

Plaintiff is proceeding *pro se*.  "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.  DISCUSSION & ANALYSIS

### A.     Discussion

#### 1.      Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 526, 126 S.Ct. 2572, 2576 (2006).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but

must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### B.    Analysis

Defendants raise numerous arguments in support of summary judgment. The court addresses each in turn.

### 1.    *Res Judicata*

Defendants contend that plaintiff's claims relating to the "aggressive homosexual" label[2] are barred by the doctrine of *res judicata*, or claim preclusion. Specifically, defendants argue that these claims were already decided in Case No. 05-CV-N-0326-ECR-VPC ("*Matthews I*").[3] That case was dismissed with prejudice for failure to state a claim, which defendants argue qualifies as a "final judgment on the merits," subjecting the instant action to dismissal because of *res judicata*.

Plaintiff's position is that even if claims relating to the "aggressive homosexual" label are barred by *res judicata*, the court must allow re-litigation for three reasons (#172, p. 3). First, plaintiff asserts he was not able to appeal the dismissal of *Matthews I* pursuant to the Prison Litigation Reform Act ("PLRA"). *Id*. Second, the District Court dismissed the complaint in the previous action based on the evidence in that record, and that the record here is expanded "because discovery has revealed the truth of the allegations." *Id*. Third, plaintiff claims that defendants have transferred plaintiff back to Ely State Prison and "the jury and court needs to know why, or at least the circumstances." *Id*.

---

[2]These include all of plaintiff's claims in Count 1, plaintiff's equal protection claim in Count 2, and plaintiff's Eighth Amendment claim in Count 3.

[3] *Matthews I* was removed by defendants from the Seventh Judicial District for the State of Nevada, where it was filed by plaintiff as Case No. CF-0503006.

Even if plaintiff could not appeal, defendants note that plaintiff has pointed to no case law to "support his argument that a litigant must be afforded the opportunity to appeal before *res judicata* attaches," and that plaintiff's argument that *res judicata* does not apply because he is an indigent is without merit (#177, p. 4-5). Defendants also point out that plaintiff chose not to file an amended complaint in *Matthew I*, which is the reason the record there was not as developed as it is here; moreover, plaintiff's failure to file an amended complaint in *Matthews I* does not allow the court to disregard *res judicata* here. *Id.* at 5. Finally, plaintiff's recent transfer back to ESP is completely irrelevant to defendants' pending motion for summary judgment because that transfer is not before the court. *Id.*

"In order to bar a later suit under the doctrine of *res judicata*, an adjudication must (1) involve the same "claim" as the later suit; (2) have reached a final judgment on the merits; and (3) involve the same parties or their privies." *Nordhorn v. Ladish Company, Inc.*, 9 F.3d 1402, 1404 (9th Cir. 1993), *see also Sidhu v. Flecto Company*, 279 F.3d 896, 900 (9th Cir. 2002). The Ninth Circuit has also held that "the doctrine of *res judicata* (or claim preclusion) bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties... on the same cause of action." *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). The court addresses each of these three issues in turn.

### a.    Same Claim

To determine whether two suits involve the same claim, courts consider four criteria:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether the two suits involve infringement of the same right; (3) whether substantially the same evidence is presented in the two actions; and (4) whether the two suits arise out of the same transactional nucleus of facts."

*Sidhu*, 279 F.3d at 900.

First, no rights or interests established in *Matthews I* would be impaired by prosecution of this action. Since the complaint was dismissed in that action, no rights or interests were ever established. Second, the two suits do involve infringement of the same rights. Plaintiff alleged that his Eighth and Fourteenth Amendment rights were violated in both actions. Third, although more

5

evidence has been presented here because discovery did not occur in *Matthews I*, had *Matthews I* gone forward, the same evidence would have been presented by both parties, as both cases involve the same allegations and facts and essentially the same parties. Fourth, the two suits arise out of the same transactional nucleus of facts. The "time, cause, and circumstances" of the claims in both actions are the same. *See Leon*, 464 F.3d at 962. Plaintiff raised far more claims in *Matthews I* than he does here. However, plaintiff's assertion that NDOC is required to remove the "aggressive homosexual" label from his I-File is the same.[4] Given that both of these cases are based upon plaintiff's objection to the "aggressive homosexual" label in his I-File and treatment plaintiff feels he has received as a result of that label, both cases arise out of the same transactional nucleus of facts.

### b.        final judgment on the merits

The court's decision in *Matthews I* was a final judgment on the merits. The court dismissed plaintiff's complaint with prejudice pursuant to Federal Rule of Civil Procedure 41(b). A dismissal under 41(b) "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b); *see also Leon v. IDX Systems Corporation*, 464 F.3d 951 (9th Cir. 2006) ("a dismissal with prejudice is a determination on the merits."). Thus, the dismissal in *Matthews I* was a final judgment on the merits.

### c.        Same Parties or their Privies

Plaintiff has named different parties in this case than in *Matthews I*. However, both suits are brought against various NDOC actors. Because all named defendants have been employees of

---

[4]In his amended complaint in *Matthews I*, plaintiff alleged that his Eighth Amendment rights were violated because CCDC staff "slandered me in I-File (sic) for taking measures to protect myself which may have influenced sentencing (already exhausted) and is currently influencing custody as if I was a violent Homosexual (sic)....It resulted in bodily harm...it has affecting liberty interest (sic): personal correspondence and return to CCSN." (Case 3:05-cv-0326-ECR-VPC, #11, p. 10). In his complaint in this case, in Count 1, plaintiff alleges that his Eighth Amendment rights have been violated in part due to the label and that he has a "vested liberty interest in going to P/S and removing the tag from my I-File." In Count 2, plaintiff alleges that his Fourteenth Amendment rights were violated because he was denied protective segregation because of the label in his I-File (#4, p. 4-7). In Count 3, plaintiff alleges that he is in imminent danger of physical bodily harm because of the label, so long as he is housed outside of protective segregation.

NDOC, there is privity among them. "There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992), *quoting Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03, 60 S. Ct. 907, 917 (1940). Therefore, the third requirement is satisfied because all defendants in both suits have been NDOC employees, and as such, officers of the same government.

The court concludes that all three requirements of *res judicata* are satisfied, and any claims relating to the "aggressive homosexual" label and plaintiff's treatment because of the label by either inmates or NDOC officials are barred.[5] This includes all of plaintiff's allegations in Count 1, plaintiff's equal protection claim in Count 2, and plaintiff's Eighth Amendment claim in Count 3.[6]

## 2.      Liability under 42 U.S.C. § 1983

Defendants next argue that the claims against defendants Thomson and Scott must be dismissed because Section 1983 does not allow suits against state officials sued in their official capacities because such suits are essentially suits against the state itself. Plaintiff contends that injunctive relief and curative relief are still available remedies against state officials sued in their official capacities, and defendants concede this point. However, defendants also claim that their official capacity arguments still apply with respect to defendant Thomson because she had not been properly served when the order (#20) was entered. The court's logic in dismissing any claims against defendant Scott to the extent they seek money damages (#20) applies equally to defendant

---

[5]On a related note, plaintiff's objections to the label affecting his future parole, psyche panel, and tier ratings are also moot as relating to classification. A correction regarding this label was added to plaintiff's "chrono-log" on March 30, 2007. It states: "LeGrand - All references in past chronos stating this inmate is an "aggressive homosexual" should be ignored. These statements originated from an inaccurate CCDC report. None of the chronos reflecting this should be used for any classifications purposes at all. This chrono is being added after consulting with OMD, Greg Smith and the Attorney General's Office" (#169, exh. 2, p. 15).

[6]Defendants' *res judicata* argument concerns the same claims as their statute of limitations argument. Since these claims are barred by *res judicata*, the court does not address the defendants' statute of limitations argument.

1   Thomson. Therefore, to the extent that the complaint seeks money damages from defendant

2   Thomson, summary judgment is granted as to such claims.

3             **3.**      **Plaintiff's interests with respect to his institutional placement and**

4                        **classification**

5        Defendants assert that, as an inmate, plaintiff does not have a liberty interest in being

6   housed at a specific locale or to being classified to protective segregation (#169, pp. 13-14). As

7   to housing, defendants argue that liberty interests are only implicated if the confinement is atypical

8   and imposes a significant hardship on an inmate in relation to "the ordinary incidents of prison

9   life." *Id*. at 14. As to classification, defendants contend that plaintiff does not have a liberty interest

10  in being housed in protective segregation, regardless of the nature of his crime because the "denial

11  of protective segregation did not represent an 'atypical and significant hardship.'" *Id*. at 14-15.

12       This issue has already been decided. In its September 12, 2007, Report and

13  Recommendation, this court noted that "prisoners have no constitutional right to choose their

14  location of incarceration" (#98, p. 8, *citing Meachum v. Fano*, 427 U.S. 215, 224 (1976)). The

15  court reiterates that plaintiff has no Constitutional interest in being housed at LCC. *See Meachum*,

16  427 U.S. at 224-225. The court will not grant injunctive relief forcing NDOC to house plaintiff

17  in a specific correctional facility or grant him a specific classification because plaintiff has not

18  shown that his confinement is atypical or imposes a significant hardship on him in relation to the

19  ordinary incidents of prison life.

20                  **4.**      **Due process rights**

21       Defendants contend that plaintiff was not subject to illegal administrative housing in excess

22  of the maximum time allowed by the Constitution because the Due Process Clause does not entitle

23  inmates to general population housing (#169, p. 15). Plaintiff can be housed in administrative

24  segregation without any violation of the Due Process Clause as long as periodic hearings are held

25  throughout the confinement, at least once every 120 days, and plaintiff has received such hearings,

26  thus satisfying due process requirements. *Id*. pp. 15-18. Plaintiff's view is that he is entitled to due

27  process before he is "subjected to punitive isolation" (#172, p. 9). In Count 2, plaintiff alleges that

28  his Due Process rights were violated because he was denied protective segregation and was instead

1    placed in administrative segregation, which plaintiff claims is the same as disciplinary segregation

2    (#4, p. 6).

3           The Due Process Clause does not create an interest in being housed to a general population

4    cell, "rather than the more austere and restrictive administrative segregation quarters." *Hewitt v.*

5    *Helms*, 459 U.S. 460, 466-67, 103 S. Ct. 864, 869 (1983). "As long as the conditions or degree of

6    confinement to which a prisoner is subjected is within the sentence imposed upon him and is not

7    otherwise violative of the Constitution, the Due Process Clause does not in itself subject an

8    inmate's treatment by prison authorities to judicial oversight." *Id.* at 467, *quoting Montanye v.*

9    *Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547 (1976). However, plaintiff is entitled to periodic

10   hearings while he is held in administrative segregation (*see* #169, p. 16). "Due process requires

11   that a prisoner have 'an opportunity to present his views' to the official 'charged with deciding

12   whether to transfer him to administrative segregation." *Toussaint v. McCarthy*, 926 F.2d 800, 803

13   (9th Cir. 1990), *quoting Hewitt*, 459 U.S. at 476. The court in *Toussaint* found that review of the

14   decision to segregate every 120 days satisfies due process. *Id.*

15          As an initial matter, the court notes that, although plaintiff contends otherwise,

16   administrative segregation is not used as a method of punishment, and therefore, plaintiff was not

17   "subjected to punitive isolation" (*see* AR 507.01(8), #169, exh. K, p. 20). During his placement

18   in administrative segregation between November 9, 2005, and the date plaintiff commenced this

19   action, plaintiff has received numerous due process hearings. These hearings have taken place with

20   far more frequency than every 120 days; indeed, plaintiff has received at least one review hearing

21   each month (*see* #169, exh. B, p. 12-14). The court finds that plaintiff's due process rights have

22   not been violated through his placement in administrative segregation; therefore summary

23   judgment is granted with regard to plaintiff's due process claims in Count 2.

24                       **5.      Equal Protection**

25          Defendants argue that plaintiff has failed to state an equal protection claim because the

26   defendants' actions were rationally related to a legitimate penological interest. Plaintiff alleges that

27   defendants discriminated against him on the basis of his sexual orientation because they

28   intentionally denied him protective segregation due to the "aggressive homosexual" label, even

                                              9

though many other sex offenders had been assigned to protective segregation (#4, p. 6).

The court declines to address the merits of plaintiff's equal protection claim as the court found *res judicata* bars this claim. Defendants' assertion that plaintiff failed to state an equal protection claim is moot.

### 6.    Retaliation

Defendants assert that plaintiff was not transferred to ESP based on a retaliatory motive, as plaintiff alleges in Count 3 of his complaint (#4, p. 8). Defendants do not dispute that plaintiff's "defense against a disciplinary action and preparation of a federal lawsuit fall within the protections of the First Amendment" (#169, p. 20). However, defendants claim that plaintiff was transferred for safety and security reasons rather than for any reason relating to plaintiff's protected speech. *Id*. Plaintiff offers no response to this argument (*See* #172, plaintiff raised his retaliation claim in Count 3 of his complaint).

Prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). Prison officials may be sued under Section 1983 for retaliating against a prisoner for exercising his or her constitutional rights. *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995). A retaliation claim involves five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004).

Although an inmate alleging a retaliatory transfer has "no constitutionally-protected liberty interest in being held at, or remaining at, a given facility," an inmate need not establish "an independent constitutional interest in… assignment to a given prison… because the crux of his claim is that state officials violated his *First Amendment* rights by retaliating against him for his protected speech activities." *Pratt*, 65 F.3d at 806 (emphasis in original). Retaliation claims must be evaluated in light of the deference accorded to prison officials. *Id*. at 807. The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged

retaliatory action.  *Id*. at 806; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).  The Ninth Circuit has recognized that "timing can properly be considered as circumstantial evidence of retaliatory intent." *Id*., *citing Pratt*, 65 F.3d at 808.

Plaintiff asserts that he was transferred to ESP from LCC in part because of a case he was building against NDOC, and that the transfer chilled his First Amendment rights. However, plaintiff does not plead or prove that there was an absence of legitimate correctional goals for the alleged retaliatory transfer. Rather, defendants have advanced a legitimate penological interest for transferring plaintiff: institutional safety and security concerns. Because plaintiff does not meet his burden of proving the absence of a legitimate correctional goal for the alleged retaliatory conduct, summary judgment is granted for defendants as to plaintiff's retaliation claim in Count 3.

### 7.        Failure to Protect

Although plaintiff did not specifically plead a claim for failure to protect under the Eighth Amendment, defendants discuss this claim in the event it may be inferred from the complaint (#169, p. 21). Defendants' position is that plaintiff has failed to state a claim for failure to protect. *Id*. Specifically, plaintiff does not claim to have suffered any harm as a result of defendants' alleged failure to protect because, although plaintiff alleges that he was forced to face imminent danger of harm, he never states that any attacks or physical harm actually befell him. *Id*. at 22.

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). Prison officials "have a duty... to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (citations omitted).   Prison officials cannot "gratuitously" allow inmates with "demonstrated proclivities for antisocial criminal, and often violent, conduct" to beat or rape another inmate – this activity serves no legitimate penological interest and does not square with "evolving standards of decency." *Id*., *citing Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) and *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society,'" *see Farmer*, 511 U.S. at 834, *citing Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) and prison officials are "under

11

1    an obligation to take reasonable measures to guarantee the safety of the inmates themselves."

2    *Hudson*, 468 U.S. at 526-27.

3         However, not every injury at the hands of another prisoner is a constitutional violation.

4    *Farmer*, 511 U.S. at 834. To establish an Eighth Amendment violation for failure to prevent harm,

5    a plaintiff's case must satisfy an objective standard – that the inmate is incarcerated under

6    conditions posing a "substantial risk of serious harm;" and a subjective standard – deliberate

7    indifference by the prison official, or in other words, that the prison official had a "sufficiently

8    culpable state of mind." *Id.*; *Wilson*, 501 U.S. at 297-304.

9         The subjective standard of deliberate indifference requires "more than ordinary lack of due

10   care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, *quoting Whitley v. Albers*, 475

11   U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles of

12   negligence at one end and purpose or knowledge at the other." *Id.* at 836. Mere negligence on the

13   part of prison staff is not sufficient to prove deliberate indifference. *Id.* Essentially, acting or

14   failing to act with deliberate indifference is "the equivalent of recklessly disregarding" a

15   substantial risk of serious harm to the inmate. *Farmer*, 511 U.S. at 836.

16        To prove deliberate indifference, plaintiff must show that the prison official knew of and

17   disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts

18   from which the inference could be drawn that a substantial risk of serious harm exists, and he must

19   also draw the inference." *Id.* at 837. The plaintiff need not prove that the official believed the

20   harm would actually befall the inmate; "it is enough that the official acted or failed to act despite

21   his knowledge of a substantial risk of serious harm." *Id.* at 842.

22        Whether a prison official had the requisite state of mind is a question of fact, "subject to

23   demonstration in usual ways, including inference from circumstantial evidence... and a factfinder

24   may conclude that a prison official knew of a substantial risk from the very fact that the risk was

25   obvious." *Id.*

26        Defendants' contention that plaintiff has failed to state a claim for failure to protect because

27   plaintiff does not allege he was actually harmed is not entirely accurate. In fact, in addition to

28   alleging that he faces imminent danger and has been subjected to possible rape attacks and threats,

1   plaintiff also states that defendants blame the label in his file "after [plaintiff is] attacked" and that

2   he has been "shoved by his celly" (#4, p. 5, 7). That said, plaintiff has failed to meet either the

3   objective or subjective standards to establish an Eighth Amendment violation for failure to prevent

4   harm. Plaintiff has not demonstrated that he was incarcerated under conditions posing a

5   "substantial risk of serious harm," and plaintiff points to only two incidents where any harm befell

6   him. Neither appears to have caused serious harm. Additionally, because plaintiff has either been

7   housed in administrative segregation or protective segregation, he has not shown that his

8   conditions of incarceration pose a substantial risk of serious harm. Plaintiff also has not met the

9   subjective standard, because he has not demonstrated that defendants were deliberately indifferent

10  to his interests or safety. Plaintiff has failed to establish that any prison official knew of and

11  disregarded "an excessive risk to his health or safety." Plaintiff may disagree with his

12  classification, but based on the evidence, plaintiff has not demonstrated that defendants failed to

13  protect him. Therefore, summary judgment is granted with regard to this issue.

### 8.   Qualified Immunity

15  Finally, defendants ask that summary judgment be granted in their favor because they are

16  immune from suit based on qualified immunity (#169, p. 22). As this Report and Recommendation

17  grants defendants' motion for summary judgment on all counts, the court declines to address

18  defendants' qualified immunity defense, as it is now moot[7].

### 9.   Plaintiff's additional claims

20  Plaintiff asserts numerous other claims in his response. These claims are not related to this

21  case. Plaintiff acknowledges that they are unrelated,[8] and the court does not address them.

22  ///

23  _____

24  [7]For the same reason, the court also does not decide whether defendants are entitled to
    Eleventh Amendment immunity. Summary judgment is granted as to all counts, making it
25  unnecessary to determine if defendants are immune.

26  [8]"Plaintiff now wishes to counter-attack and raise additional constitutional violations and
    claims due to the defendants' attached exhibits based on these grounds:..." and  "The issues of why
27  plaintiff is back at ESP is (sic) in the record now. They are beyond the scope of the issues regarding
28  12/20/2005, but since they are both exculpatory and inculpatory, and will be used against the state,
    plaintiff will address them" (#172, pp. 5, 9).

1

### III. CONCLUSION

2

3

Based on the foregoing and for good cause appearing, the court concludes that:

4

Count 1: Plaintiff does not have a vested liberty interest in being housed in protective segregation. Further, this court previously found that plaintiff did not have a constitutional right to choose the location of his confinement. Plaintiff has also not demonstrated that defendants failed to protect him to the extent of violating plaintiff's Eighth Amendment rights. The court grants summary judgment as to Count 1.

5

6

7

Count 2: Defendants have sufficiently demonstrated that they did not violate plaintiff's due process or equal protection rights by denying him access to protective segregation. Plaintiff was afforded due process while in administrative segregation and defendants had a legitimate reason for not housing plaintiff in protective segregation that was not improperly based on the "aggressive homosexual" label in plaintiff's I-File. The court grants summary judgment as to Count 2.

8

9

10

Count 3: Plaintiff has not shown that defendants' refusal to place him in protective segregation was in retaliation for plaintiff's exercise of his First Amendment rights to bring suit against the state. Additionally, the court previously dismissed plaintiff's claim that his Eighth Amendment rights have been violated because he is in imminent danger of physical bodily harm (*see* #98). The court grants summary judgment as to Count 3.

11

12

13

14

As such, the court respectfully recommends that defendants' motion for summary

15

judgment (#169) be **GRANTED** as to all counts.

16

The parties are advised:

17

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

18

the parties may file specific written objections to this report and recommendation within ten days

19

of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

20

Recommendation" and should be accompanied by points and authorities for consideration by the

21

District Court.

22

2.    This report and recommendation is not an appealable order and any notice of appeal

23

pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

24

judgment.

25

///

26

///

27

///

28

///

14

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#169) be **GRANTED** as to all counts.

**DATED:** October 21, 2008.

_Valerie P. Cooke_

_____

**UNITED STATES MAGISTRATE JUDGE**

15